**FILED - GR**

August 13, 2012 4:30 PM

TRACEY CORDES, CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: anm / _____ Scanned: am 8-13

1 Geoffrey A. Fields (P41788)
<gfields@dickinsonwright.com>
2 DICKINSON WRIGHT PLLC
200 Ottawa Avenue N.W.
3 Grand Rapids, MI 49503-2427
Telephone: (616) 458-1300
4 Facsimile: (616) 458-6753

5 Robert H. Horn, *pro hac vice application pending*
<rhorn@proskauer.com>
6 Robert D. Forbes, *pro hac vice application pending*
<rforbes@proskauer.com>
7 PROSKAUER ROSE LLP
2049 Century Park East, 32nd Floor
8 Los Angeles, CA 90067-3206
Telephone: (310) 557-2900
9 Facsimile: (310) 557-2193

10 Attorneys for Plaintiff
National Academy of Recording Arts &
11 Sciences, Inc.

12

**1:12-cv-839**

Janet T. Neff
U.S. District Judge

13 UNITED STATES DISTRICT COURT

14 WESTERN DISTRICT OF MICHIGAN

15

16 NATIONAL ACADEMY OF ) Case No.
RECORDING ARTS & SCIENCES, INC., )
17 a Delaware corporation, )
) **COMPLAINT FOR INJUNCTIVE**
18 Plaintiff, ) **RELIEF**
)
19 v. )
)
20 BLACK ESSENCE GRAMMY )
AWARDS, INC., a Michigan corporation; )
21 and GWENDOLYN SPINKS, an )
individual, )
22 )
Defendants. )
23 )

24

25

26

27

28

1  Plaintiff National Academy of Recording Arts & Sciences, Inc. ("The

2  Recording Academy®"), by its attorneys, Dickinson Wright PLLC and Proskauer

3  Rose LLP, for its complaint against defendants Black Essence Grammy Awards,

4  Inc. ("BEGA") and Gwendolyn Spinks ("Spinks"), alleges as follows:

5  **THE PARTIES**

6  1.  The Recording Academy is a Delaware not-for-profit corporation with

7  its principal place of business located at 3030 Olympic Boulevard, Santa Monica,

8  California 90404.  The Recording Academy has over 18,000 members.  For more

9  than 50 years The Recording Academy has represented the individuals who

10  contribute to the creation and exploitation of recorded music, including recording

11  artists, musicians, songwriters and record producers.  Among other activities, The

12  Recording Academy presents the annual GRAMMY Awards, the only peer-

13  presented awards that honor artistic achievement in the music industry.  The

14  GRAMMY Awards is telecast throughout the world.

15  2.  On information and belief, defendant Black Essence Grammy Awards,

16  Inc. is a Michigan nonprofit corporation with its principal place of business located

17  at 592 Pipestone Street, Benton Harbor, Michigan 49022.  It organizes an annual

18  event titled the "Black Essence Grammy Awards."

19  3.  On information and belief, defendant Gwendolyn Spinks is an

20  individual residing in Benton Harbor, Michigan, and the president of BEGA.

21  **NATURE OF THE ACTION**

22  4.  This is an action for trademark infringement, trade dress infringement,

23  trademark dilution, trade dress dilution, and unfair competition under the Federal

24  Trademark Act of 1946, as amended, 15 U.S.C. § 1051 et seq. (the "Lanham Act"),

25  as well as common law trademark infringement and unfair competition under the

26  laws of the State of Michigan.

27  5.  In October 2011, The Recording Academy learned that defendants had

28  used The Recording Academy's federally registered trademarks in connection with a

1

1 gospel music awards show titled the "Black Essence Grammy Awards" held on or
2 about October 1, 2011 in South Bend, Indiana.

3      6.     On or about October 16, 2011, The Recording Academy's attorney
4 wrote to Spinks to inform her of The Recording Academy's rights in the
5 GRAMMY® and GRAMMY AWARDS® marks in connection with (among other
6 things) awards shows promoting excellence in the recording arts and sciences. The
7 Recording Academy demanded that Spinks cease and desist from using the
8 GRAMMY and GRAMMY AWARDS marks in connection with her gospel music
9 awards show. Spinks did not respond to the letter.

10      7.     Instead, on or about March 2, 2012, Spinks formed Black Essence
11 Grammy Awards, Inc. as a Michigan non-stock corporation.

12      8.     On or about May 16, 2012, The Recording Academy's attorney wrote
13 to defendants to inform them, among other things, that their use of the GRAMMY
14 and GRAMMY AWARDS marks (including the BEGA corporate name) infringed
15 The Recording Academy's federal trademark rights. The Recording Academy
16 demanded that defendants stop their infringing conduct and take steps to correct the
17 consumer confusion they engendered by removing their unlawful use of the marks
18 from the Internet. Defendants have refused to comply with these demands.

19      9.     Defendants willfully appropriated The Recording Academy's federally
20 registered trademarks for the purpose of misleading the relevant purchasing public
21 into believing that their organization and gospel awards show is affiliated with or
22 sanctioned by The Recording Academy. Thus, defendants are perpetrating a fraud
23 on the public, free riding on The Recording Academy's efforts, and diluting The
24 Recording Academy's brand.

25 **JURISDICTION AND VENUE**

26      10.     The Court has subject matter jurisdiction over the federal trademark
27 claims arising under the Lanham Trademark Act of 1946, as amended, 15 U.S.C.
28 § 1051 et seq., pursuant to 15 U.S.C. §§ 1121 and 28 U.S.C. §§ 1331 and 1338. The

Court has subject matter jurisdiction over the state and common law claims pursuant to 28 U.S.C. § 1332 and has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367.

11.   Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c).  Defendants are subject to personal jurisdiction in this judicial district as each of them has caused tortious injury in this judicial district and is engaged in doing business within this judicial district.

12.   The amount in controversy in this matter exceeds $75,000.00.

## FACTS COMMON TO ALL COUNTS

13.   The Recording Academy has built a tradition as the premier outlet for honoring achievements in the recording arts and for supporting the music community.  At the heart of this tradition is the Recording Academy's annual GRAMMY Awards.  The GRAMMY Awards are the only peer-presented award to honor artistic achievement, technical proficiency and overall excellence in the recording industry, without regard to album sales or chart position.

14.   The Recording Academy's GRAMMY Awards ceremony, known as "Music's Biggest Night," is the music industry's premier event.  The biggest names in the entertainment world attend the ceremony.  The GRAMMY Awards telecast is one of television's major broadcast events.  The telecast of the 54th Annual GRAMMY Awards on February 12, 2012 attracted 39.9 million viewers in the United States and was the highest-rated awards show of the season.  The 54th Annual GRAMMY Awards were also the biggest social event in the history of television, drawing 13 million social media comments.  The conversation on Twitter reached a high of 160,341 tweets per minute during the live telecast.

15.   In addition to its annual GRAMMY Awards show, The Recording Academy uses the GRAMMY, GRAMMY AWARDS, and other related marks in connection with a variety of other goods and services.  These uses are reflected by

3

1  the federal trademark registrations The Recording Academy owns (the "GRAMMY
2  Marks"), which include the following:

3       a.    U.S. Reg. No. 3,202,214 for use of "GRAMMY" in connection with
4  entertainment services, namely, live performances by musical artists and musical
5  groups; entertainment in the nature of televised music awards programs; an annual
6  awards program for the presentation of awards in recognition of distinguished
7  achievement in the field of music; providing a website featuring prerecorded music,
8  musical performances, audio clips, photographs, news, reviews and other
9  multimedia articles in connection with the field of music. A copy of this registration
10  is attached hereto and marked as Exhibit A.

11       b.    U.S. Reg. No. 3,202,215 for use of "GRAMMY" in connection with
12  printed matter, namely tickets, invitations, posters, booklets, brochures, bulletins,
13  circulars, newsletters, magazine sections, and pamphlets, all in the field of the
14  recording arts and sciences; stickers, decals, lithographs, pens, pencils, notecards,
15  postcard, notepads, notebooks, calendars, event programs and souvenir programs
16  concerning the recording arts and sciences. A copy of this registration is attached
17  hereto and marked as Exhibit B.

18       c.    U.S. Reg. No. 3,202,216 for use of "GRAMMY" in connection with
19  clothing, namely, t-shirts, sweatshirts, jackets, and hats and caps. A copy of this
20  registration is attached hereto and marked as Exhibit C.

21       d.    U.S. Reg. No. 3,202,217 for use of "GRAMMY AWARDS" in
22  connection with association services, namely, promoting artistic progress and
23  achievement in the field of recording arts and sciences. A copy of this registration is
24  attached hereto and marked as Exhibit D.

25       e.    U.S. Reg. No. 3,202,218 for use of "GRAMMY AWARDS" in
26  connection with printed matter, namely tickets, invitations, posters, booklets,
27  brochures, bulletins, circulars, newsletters, magazine sections, and pamphlets, all in
28  the field of the recording arts and sciences; stickers, decals, lithographs, pens,

4

pencils, notecards, postcard, notepads, notebooks, calendars, event programs and souvenir programs concerning the recording arts and sciences. A copy of this registration is attached hereto and marked as Exhibit E.

f. U.S. Reg. No. 3,251,375 for use of "GRAMMY AWARDS" in connection with educational services, namely, providing incentives to people to demonstrate excellence in the field of music and video arts and sciences through the issuance of awards; entertainment services, namely, live performances by musical artists and musical groups; entertainment in the nature of televised music awards programs; an annual awards program for the presentation of awards in recognition of distinguished achievement in the field of music; providing a website featuring prerecorded music, musical performances, audio clips, photographs, news, reviews and other multimedia articles in connection with the field of music. A copy of this registration is attached hereto and marked as Exhibit F.

g. U.S. Reg. No. 3,197,469 for use of "GRAMMY SALUTE TO GOSPEL MUSIC" in connection with printed matter, namely tickets, invitations, posters, booklets, brochures, bulletins, circulars, newsletters, magazine sections, and pamphlets in the field of the recording arts and sciences. A copy of this registration is attached hereto and marked as Exhibit G.

h. U.S. Reg. No. 3,220,636 for use of "GRAMMY SALUTE TO GOSPEL MUSIC" in connection with educational services, namely, conducting concerts, workshops and seminars to promote artistic progress and achievement in the field of recording arts and sciences; and entertainment services in the nature of a television program featuring music. A copy of this registration is attached hereto and marked as Exhibit H.

i.   U.S. Reg. No. 1,675,416 for use of the gramophone design

in connection with award ceremonies in the field of entertainment.  A copy of this registration is attached hereto and marked as Exhibit I.

j.   U.S. Reg. No. 3,068,324 for use of the gramophone design



in connection with association services, namely, promoting the interests of musicians and music industry professionals to further artistic progress and achievement in the field of recording arts and sciences.  A copy of this registration is attached hereto and marked as Exhibit J.

16.   The validity of the GRAMMY Marks and of their registration, The Recording Academy's ownership of the marks, and The Recording Academy's exclusive right to use the GRAMMY Marks in commerce for the above-mentioned goods and services are incontestable under 15 U.S.C. §§ 1115(b) and 1065.

17.   As a result of The Recording Academy's substantial and uninterrupted use and promotion of the GRAMMY Marks on a wide variety of goods and services, the GRAMMY Marks have become famous among the relevant consuming public and possess significant goodwill of great value to The Recording Academy.

18.   On or about October 1, 2011, Spinks held an event titled the "Black Essence Grammy Awards" at the Century Center at 120 South Saint Joseph Street,

South Bend, Indiana, 46601. Spinks described the event in promotions and advertising as an awards ceremony to honor gospel musicians, dancers, authors, and others with awards, cash, scholarships, and other prizes. Spinks has represented that sponsors of the event included McDonalds, Cisco, and Mega Live Radio. An advertisement for the 2011 Black Essence Grammy Awards is attached hereto and marked as Exhibit K.

19. On or about On October 16, 2011, having discovered Spinks' unlawful conduct described herein, The Recording Academy: (a) informed Spinks that her use of the GRAMMY Marks infringed The Recording Academy's rights in the federally registered GRAMMY Marks; (b) demanded that Spinks cease and desist using the GRAMMY Marks in connection with her awards show; (c) demanded that Spinks take steps to revise or delete infringing information on the Internet and elsewhere relating to the 2011 event; and (d) demanded that Spinks provide written assurance that she will not infringe upon the GRAMMY Marks in the future. Spinks did not respond to the letter.

20. Instead, on or about March 2, 2012, Spinks formed BEGA as a Michigan non-stock corporation. Spinks willfully incorporated the GRAMMY and GRAMMY AWARDS marks into BEGA's corporate name knowing that this would mislead the relevant purchasing public into believing BEGA was affiliated with The Recording Academy. According to Spinks, BEGA's "mission" is "to promote and empower gospel artists, musicians, groups, poets, book authors and more."

21. Defendants plan to hold a 2012 installment of the "Black Essence Grammy Awards" on October 6, 2012 at the Century Center at 120 South Saint Joseph Street, South Bend, Indiana, 46601. Defendants have advertised tickets for sale for $55 per person.

22. Defendants have described their upcoming 2012 Black Essence Grammy Awards in promotions and advertising as a "ceremony for gospel artists, poets, authors, productive global leaders, scholarship awards, praise dancers, fashion

1  decor, and more." Defendants promise attendees a "gospel entertainments awards"

2  show featuring "gifts, cash, prizes and much more." Defendants claim that the

3  Black Essence Grammy Awards have been and/or will be broadcast on "radio and

4  TV media."

5       23.    Defendants have publicized the Black Essence Grammy Awards on

6  their website www.blackessensemagazine.com, along with various other websites

7  and social media outlets (including Facebook, Ning, Wherevent.com, Allevents.in,

8  Eventbrite.com, among others). Defendants maintain the e-mail address

9  blackessencegrammy@yahoo.com for the purpose of advertising and publicizing the

10 Black Essence Grammy Awards.

11      24.    On or about May 16, 2012, having discovered Defendants' unlawful

12 conduct described herein, The Recording Academy: (a) informed Defendants that

13 their use of the GRAMMY Marks infringes upon The Recording Academy's federal

14 trademark rights; (b) demanded that Defendants cease and desist using the

15 GRAMMY Marks in connection with their awards show; (c) demanded that

16 Defendants take steps to revise or delete infringing information relating to the 2011

17 and 2012 events; (d) demanded that Defendants file the necessary paperwork to

18 remove the GRAMMY mark from BEGA's corporate name; and (e) demanded that

19 Defendants provide written assurances that they will not infringe upon the

20 GRAMMY Marks in the future. Defendants have not complied with these demands.

21      25.    Defendants' use of the GRAMMY Marks in connection with their

22 gospel music awards show falsely indicates to consumers that The Recording

23 Academy is affiliated with the Black Essence Grammy Awards. Defendants'

24 actions have caused confusion among consumers regarding whether The Recording

25 Academy produced, sponsored, authorized, or otherwise licensed the Black Essence

26 Grammy Awards.

27      26.    The foregoing actions have occurred in, or in a manner affecting,

28 interstate commerce.

27.     Defendants' activities as described above have been willful, wanton, and in deliberate disregard of The Recording Academy's trademark rights, and for the purpose of intentionally misappropriating and capitalizing on The Recording Academy's goodwill and misleading the relevant purchasing public.

28.     The activities of defendants complained of herein have caused and unless restrained and enjoined by the Court, will continue to cause irreparable harm, damage, and injury to The Recording Academy, for which it cannot be adequately compensated at law.

29.     Unless restrained and enjoined by this Court, defendants will continue to engage in the unlawful activities described herein.

**COUNT I**

**TRADEMARK INFRINGEMENT IN VIOLATION OF 15 U.S.C. § 1114**

**(Against All Defendants)**

30.     The Recording Academy repeats and realleges every allegation contained in paragraphs 1-29 as though fully set forth herein.

31.     Defendants have infringed The Recording Academy's GRAMMY Marks in connection with defendants' organizing, marketing, promoting, and producing the Black Essence Grammy Awards.  Defendants' actions:  (a) are likely to cause confusion or mistake or to deceive the relevant consuming public; (b) are likely to cause consumers and the public to mistakenly believe that The Recording Academy produced, sponsored, authorized, or licensed the Black Essence Grammy Awards; and (c) are likely to damage the reputation and goodwill previously established by The Recording Academy in its GRAMMY Awards and related goods and services.  The foregoing acts of defendants constitute trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114.

32.     This is an exceptional case within the meaning of Section 35 of the Lanham Act, 15 U.S.C. § 1117, entitling The Recording Academy to, among other things, an award of reasonable attorneys' fees.

9

1

## COUNT II

## FALSE ADVERTISING IN VIOLATION OF 15 U.S.C. § 1125(a)

### (Against All Defendants)

33.     The Recording Academy repeats and realleges every allegation contained in paragraphs 1-32 as though fully set forth herein.

34.     Defendants' conduct as described herein constitutes false and misleading representations of fact in commercial advertising or promotion that misrepresent the nature, characteristics and qualities of the goods and services defendants offer to sell and/or sell.

35.     Defendants' conduct as described herein constitutes false advertising and misrepresentations in violation of 15 U.S.C. § 1125(a).

36.     This is an exceptional case within the meaning of Section 35 of the Lanham Act, 15 U.S.C. § 1117, entitling The Recording Academy to, among other things, an award of reasonable attorneys' fees.

## COUNT III

## UNFAIR COMPETITION IN VIOLATION OF 15 U.S.C. § 1125(a)

### (Against All Defendants)

37.     The Recording Academy repeats and realleges every allegation contained in paragraphs 1-36 as though fully set forth herein.

38.     Defendants' use of the GRAMMY Marks, including, without limitation, organizing, marketing, promoting, and producing the Black Essence Grammy Awards, is likely to cause consumers to draw the false impression that defendants and/or the Black Essence Grammy Awards are associated with, authorized, endorsed or sponsored by, or that defendants are a sponsor or licensee of, The Recording Academy.

39.     Defendants conduct as described herein constitutes false designation of origin in violation of 15 U.S.C. § 1125(a).

40.     This is an exceptional case within the meaning of Section 35 of the Lanham Act, 15 U.S.C. § 1117, entitling The Recording Academy to, among other things, an award of reasonable attorneys' fees.

## COUNT IV

## TRADEMARK DILUTION IN VIOLATION OF 15 U.S.C. § 1125(c)

### (Against All Defendants)

41.     The Recording Academy repeats and realleges every allegation contained in paragraphs 1-40 as though fully set forth herein.

42.     The GRAMMY Marks are famous and were famous long prior to defendants' unauthorized use of such marks within the meaning of 15 U.S.C. § 1125(c).

43.     Defendants' actions as described above constitute dilution of the distinctive quality of the famous and distinctive GRAMMY Marks, in violation of 15 U.S.C. §1125(c).

44.     This is an exceptional case within the meaning of Section 35 of the Lanham Act, 15 U.S.C. § 1117, entitling The Recording Academy to, among other things, an award of reasonable attorneys' fees.

## COUNT V

## COMMON LAW TRADEMARK INFRINGEMENT

### (Against All Defendants)

45.     The Recording Academy repeats and realleges every allegation contained in paragraphs 1-44 as though fully set forth herein.

46.     Defendants' actions as described above constitute trademark infringement in violation of The Recording Academy's rights under the common law of the State of Michigan.

11

## COUNT VI

## COMMON LAW UNFAIR COMPETITION

### (Against All Defendants)

47.     The Recording Academy repeats and realleges every allegation contained in paragraphs 1-46 as though fully set forth herein.

48.     Defendants' actions as described above constitute unfair competition in violation of The Recording Academy's rights under the common law of the State of Michigan.

### PRAYER FOR RELIEF

WHEREFORE, The Recording Academy prays for judgment as follows:

1.      Temporarily, preliminarily and permanently enjoining Black Essence Grammy Awards, Inc., its officers, agents, servants and employees, and all persons in active concert and participation with it, and Gwendolyn Spinks, and all persons in active concert and participation with her, from using or displaying for any purpose the GRAMMY Marks or any other registered mark, or any depiction, image, photograph, picture, illustration or other visual representation containing any registered mark owned by The Recording Academy and/or any of it affiliates, including without limitation the GRAMMY Foundation, Inc. and/or the MusiCares Foundation, Inc.;

2.      Directing that, pursuant to the power granted this Court under 15 U.S.C. § 1118, all unauthorized merchandise, awards, statuettes, signs, point of purchase displays and materials, boxes, packaging, wrappings, catalogs, decals, flyers, brochures, or other goods or printed matter or advertising or promotional materials bearing the GRAMMY Marks or any other marks confusingly similar to the foregoing marks, be delivered up for destruction or other disposition at The Recording Academy's sole discretion;

3.      Directing that defendants file with the Michigan Department of Licensing and Regulatory Affairs all documents (including, but not limited to, a

Certificate of Amendment to the Articles of Incorporation) required to change the name of Black Essence Grammy Awards, Inc. to remove the GRAMMY mark;

4. Directing that defendants remove all references to or uses of the GRAMMY Marks from all websites, online accounts, and social networking pages (e.g., Facebook.com, LinkedIn.com, Ning.com; YouTube.com, MySpace.com) that they control, and cease using, cancel and remove from all websites all references to email addresses that include the GRAMMY Marks (including but not limited to blackessencegrammy@yahoo.com);

5. Directing that defendants contact any third-party service appearing within the first 100 Google search results for "Black Essence Grammy Awards", request that the reference to the GRAMMY Marks be removed, and engage in corrective advertising on any and all such websites that have included a reference to the "Black Essence Grammy Awards" to make clear that this event was not affiliated with The Recording Academy or the GRAMMY Awards;

6. Directing that defendants inform all parties with which defendants have actively interacted in 2011 or 2012 in connection with the Black Essence Grammy Awards (e.g., nominees, award winners, sponsors, presenters, and invitees) that the GRAMMY Marks were used without The Recording Academy's permission and should not be used to refer to the event or the awards;

7. Directing that defendants file with the Court and serve upon The Recording Academy, within 30 days after entry of final judgment, a report in writing and under oath setting forth in detail the manner and form in which defendants have complied with the provisions set forth in paragraphs 1 through 6 of this prayer for relief;

8. Determining this to be an "exceptional case" within the meaning of 15 U.S.C. § 1117 and directing defendants pay to The Recording Academy the costs of this action and reasonable attorneys' fees; and

9.    Granting The Recording Academy such other and further relief as the Court may deem just and proper.

Dated:  August 13, 2012

DICKINSON WRIGHT PLLC

_____ (P47188)
Geoffrey A. Fields  (P41788)
<gfields@dickinsonwright.com>
DICKINSON WRIGHT PLLC
200 Ottawa Avenue N.W.
Grand Rapids, MI   49503-2427
Telephone:    (616) 458-1300
Facsimile:     (616) 458-6753


Robert H. Horn, *pro hac vice application pending*
<rhorn@proskauer.com>
Robert D. Forbes, *pro hac vice application pending*
<rforbes@proskauer.com>
PROSKAUER ROSE LLP
2049 Century Park East, 32nd Floor
Los Angeles, CA  90067-3206
Telephone:    (310) 557-2900
Facsimile:     (310) 557-2193

Attorneys for Plaintiff
National Academy of Recording Arts & Sciences, Inc.

BLOOMFIELD 99998-302 1213780v1

14